United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 25, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 04-60409

———————————

LARRY G. BELLUM,

                                        Plaintiff-Appellant,

        versus

PCE CONSTRUCTORS INC.,

                                        Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Mississippi

———————————

Before GARWOOD, JONES and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

        Plaintiff-appellant Larry G. Bellum appeals the decision of
the district court granting summary judgment to defendant-appellee
PCE Constructors, Inc. (PCE) on Bellum's federal claim under the
Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, and
on his pendent Mississippi law claims for both the intentional and
negligent infliction of emotional distress.  We affirm.

**Facts and Proceedings Below**

PCE is in the construction industry and does work primarily on a project-by-project basis.[1] Its principal place of business is Baton Rouge, Louisiana, though it takes on projects across several southern states. During the time giving rise to the events in this case, PCE was building a facility for Fabricated Pipe, Inc (FPI) in Fernwood, Mississippi. PCE was also involved in helping FPI establish its pipe fabrication business.

PCE hired Bellum, who had worked for PCE on a contract-basis before, on December 12, 1999 to manage a particular project at the FPI site in Fernwood. PCE had a staff of 14 at its headquarters in Baton Rouge and 41 at the FPI site. Bellum testified in his deposition that he drove each day between his home in Baton Rouge and Fernwood, a round-trip of about 190 miles. The distance between PCE's headquarters and FPI is between 66.5 and 69.5 linear miles but 88.5 miles over public

---

[1] PCE argued in the district court that it is not a proper party under Rule 17 of the Federal Rules of Civil Procedure because it is not the successor to Constructors, Inc., which actually employed Bellum during the relevant period. The district court noted in its summary judgment order that it did not find it necessary to reach this issue in resolving the case in PCE's favor. In its brief before us, PCE noted that it was not going to address the proper party argument but asks us not to construe this as a waiver of the objection. Like the district court, we too are able to resolve the questions before us in PCE's favor, so the proper party issue is moot. Accordingly, for the purposes of appeal, we assume, *arguendo*, that PCE was Bellum's employer, and hence refer to it as such.

roadways.[2]

On December 24, 2000, Bellum told his supervisor, Charles Gibson, that he was taking leave from work to have open-heart surgery. Bellum's last day was December 26, 2000. Bellum contends that while he was on leave for his heart surgery, Gibson repeatedly told both him and his wife that a job was waiting for him at the FPI site. Following his recovery from heart surgery, Bellum visited the FPI site on March 1, 2001 to investigate returning to work. Gibson apparently told him there was no longer any work for him because Bellum's project was completed in his absence. The two remained in touch over the next two weeks discussing work possibilities, but Bellum was formally terminated on March 16, 2001 without ever having returned to work.

On March 3, 2003, Bellum filed the instant suit in the district court seeking relief under the FMLA and for state law claims of emotional distress. On April 5, 2004, the district court granted summary judgment to PCE on the ground that Bellum was not an "eligible employee" under the FMLA. The district

---

[2] In his memorandum in opposition to summary judgment, Bellum submitted several exhibits measuring the linear distance by various scientific methods. PCE stated that it calculated the distance over public roads using the popular website www.mapquest.com. In his brief on appeal, Bellum argues that the driving distance between PCE's headquarters and the FPI worksite is greater than 75 miles but less than 80. We presume that Bellum is measuring the shortest possible distance over public roads whereas PCE is measuring the distance using the interstate highways. In any case, Bellum does not dispute that the shortest possible distance over the public roadways exceeds 75 miles.

3

court also concluded that, absent a duty under the FMLA to rehire Bellum, PCE was free not to rehire him because Mississippi is an employment at-will state. It follows from this, the district court reasoned, that Bellum could not succeed on his claim that he suffered actionable emotional distress when PCE chose not to rehire him. It is from this disposition that Bellum now appeals.

## Discussion

### A. Standard of Review

We review a grant of summary judgment under the same standard applied by the district court. *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 319 (5th Cir. 2003). We examine questions of law *de novo* and construe disputed material facts in favor of the non-movant. *Id.*

### B. The FMLA

The FMLA provides, *inter alia*, an "eligible employee" with "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition[.]" 29 U.S.C. § 2612(a)(1)(D). The parties do not dispute that Bellum's heart problems qualify as a "serious health condition." What they do dispute, however, is whether Bellum is an "eligible employee." PCE maintains that Bellum falls within one of two enumerated exceptions to the definition of eligible employee:

> "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by

4

the employer within 75 miles of that worksite is less than 50."

29 U.S.C. § 2611(2)(B)(ii). This exception applies, PCE contends, because its headquarters, as measured over public roads, is more than seventy-five miles from the FPI worksite.[3] Bellum counters that the exception does not apply because the linear distance, i.e. "as the crow flies," between FPI and the Baton Rouge headquarters is less than 70 miles.

The district court resolved this controversy by consulting 29 C.F.R. § 825.111(b), which states that the "75-mile distance is measured by surface miles, using surface transportation over public streets, roads, highways and waterways, by the shortest route from the facility where the eligible employee needing leave is employed." The regulation goes on to provide that the 75-mile distance should only be measured as the crow flies when there is no "available surface transportation between worksites." *Id.*[4] The district court granted summary judgment to PCE because, under the method of measurement set forth in the regulation, Bellum was not an FMLA-eligible employee. Because the FMLA speaks simply of miles, not "surface miles," Bellum urges us to strike down 29

---

[3] The parties do not dispute that PCE employed fewer than 50 employees at the FPI worksite but more than 50 at the FPI site and the Baton Rouge headquarters combined.

[4] 29 U.S.C. § 2654 provides that "The Secretary of Labor shall prescribe such regulations as are necessary to carry out subchapter I [29 U.S.C. §§ 2611-2619] of this chapter and this subchapter [29 U.S.C. §§ 2651-2654] . . . .".

C.F.R. § 825.111(b) as manifestly contrary to the plain language of 29 U.S.C. § 2611(2)(B)(ii).

We review federal regulations of the sort at issue here under the familiar *Chevron* doctrine. If a statute is unambiguous, then the statute prevails over an inconsistent regulation. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778, 2781 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (citations omitted). To ascertain whether the statute has spoken unambiguously to the question at issue, we avail ourselves of the traditional means of statutory interpretation, which include, *see, e.g., Gen. Dynamics Land Sys., Inc. v. Cline*, 124 S. Ct. 1236, 1248-1249 (2004), the text itself, its history, and its purpose. While the 75-mile distance set forth in the statute is not inherently ambiguous, we disagree with Bellum that the failure of Congress to stipulate a method of measuring that distance implies that it should be measured as the crow flies. To measure in linear terms as Bellum suggests would regularly conduce to absurd results and no canon of statutory construction requires us to honor plain language when to do so would frustrate the unmistakable purpose of the law. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 120 S. Ct. 1942, 1947 (2000) (stating that "when the

6

statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.") (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.*, 109 S. Ct. 1026, 1030 (1989) (in turn quoting *Caminetti v. United States*, 37 S. Ct. 194 (1917)); *Harbert v. Healthcare Services Group, Inc.*, 391 F.3d 1140, 1150-1151 (10th Cir. 2004) (stating, as one of its reasons for striking down an FLMA regulation, that no deference is owed to an interpretation of the statute that makes arbitrary distinctions).

The error in Bellum's approach may be illustrated as follows. Suppose that Company A had its headquarters along the south rim of the Grand Canyon and a branch office on the other side only 25 miles away as the crow flies. Suppose further, quite plausibly, that the shortest distance between the two by public roads is 120 miles. Now, imagine that Company B has its headquarters next to a straight-line interstate highway and a branch office 80 miles away also right along the interstate. Under Bellum's reading of the statute, Company A would be bound by the FMLA but Company B would not be. Given that the purpose of the exception at 29 U.S.C. § 2611(2)(B)(ii) is to relieve the burden of FMLA compliance on companies with widely dispersed operations, it would make no sense to construe the statute in a way that subjects Company A but exempts Company B. *See Moreau v.*

7

*Air France*, 356 F.3d 942, 945 (9th Cir. 2004) (concluding that the purpose of the exception was "to accommodate employer concerns about 'the difficulties that an employer might have in reassigning workers to geographically separate facilities.'") (quoting H.R. Rep. No. 102-135, pt. 1, at 37 (1991))); 29 U.S.C. 2601(b)(1) & (3) ("It is the purpose of this Act to balance the demands of the workplace with the needs of families...in a manner that accommodates the legitimate interests of employers."); *see also Harbert*, 391 F.3d at 1150 (making use of a similar hypothetical to illustrate an arbitrary and capricious interpretation of the FMLA). We conclude, therefore, that the decision of Congress not to define a method of measuring the 75-mile distance constitutes an implicit statutory gap the Secretary of Labor is authorized to fill by 29 U.S.C. § 2654 (see note 4, *supra*).[5]

When Congress has left an implicit gap such as this one, the question before us is simply "whether the [regulation] is based on a permissible construction of the statute." *Chevron*, 104 S. Ct. at 2782. In answering this question, we consider only whether the regulation is arbitrary, capricious, or manifestly contrary to the FMLA. *Id.* We may not substitute our own

---

[5] In concluding that Congress was silent on the appropriate method of measuring the 75-mile distance, we also reject Bellum's argument that the Secretary of Labor was without authority to issue 29 C.F.R. § 825.111(b).

8

preference for a reasonable alternative devised by the Secretary of Labor. *Id.* "The Secretary's judgment that a particular regulation fits within" the statutory framework of the FMLA "must be given considerable weight." *Ragsdale v. Wolverine World Wide, Inc.*, 122 S. Ct. 1155, 1160 (2002). This is the essence of what is known as *Chevron* deference.

We hold that 29 C.F.R. § 825.111(b) is entitled to deference.[6] In our view, the regulation recognizes that the FMLA

---

[6] Bellum's reliance on *Ragsdale* is misplaced. In *Ragsdale*, the Supreme Court struck down an FMLA regulation on the ground that it had no basis in the language of the FMLA and, moreover, was fundamentally inconsistent with the remedial nature of the statute. *See, e.g.,* the following from *Ragsdale*:

> "Our deference to the Secretary, however, has important limits: A regulation cannot stand if it is '"arbitrary, capricious, or manifestly contrary to the statute."' *United States v. O'Hagan, supra*, at 673, 117 S.Ct. 2199 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984))." (122 S.Ct. at 1160).

> . . .

> "We need not decide today whether this conclusion [of the regulation] accords with the text and structure of the FMLA, or whether Congress has instead 'spoken to the precise question' of notice, *Chevron, supra*, at 842, 104 S.Ct. 2778, and so foreclosed the notice regulations. Even assuming the additional notice requirement is valid, the categorical penalty the Secretary imposes for its breach is contrary to the Act's remedial design." (122 S.Ct. at 1161).

In this case, on the other hand, Congress was silent as to the method of measuring the 75-mile distance and the regulation promulgated by the Secretary of Labor advances, rather than impairs, the FMLA's remedial purpose. Nor is the regulation contrary to the design of the statute.

is concerned with the practical issue of how an employer will be able to staff its business when an employee takes leave.  Given that the overwhelming majority of workers in this country use surface transportation to get to work, the regulation implements the statutory scheme in a way that is consistent with the intent of Congress and germane to the challenges employers face in complying with the FMLA.  The Secretary's approach has the additional advantage of avoiding the sort of absurd result we hypothesized might prevail under Bellum's reading of the statute.[7]

---

We also reject Bellum's contention that his method of linear measurement has been widely adopted by the federal courts. Bellum bases this assertion on the fact that numerous cases have used the word "radius," which by definition is a straight line from the center of a circle to anywhere along its edge, when discussing the 75-mile distance described by 29 U.S.C. § 2611(2)(B)(ii).  None of the twenty cases Bellum cites, however, concerned the question at issue here and it is evident that the courts were using the term "radius" in a colloquial, rather than technical, sense.

[7] Several weeks after oral argument and in response to a question put to counsel by the panel about how distances are measured for the purposes of service of process, Bellum brought to our attention *Sprow v. Hartford Ins. Co.*, 594 F.2d 412 (5th Cir. 1979).  In *Sprow*, we concluded that measuring "as the crow flies" is the proper method for measuring the 100-mile distance for service of process under what was then FED. R. CIV. P. 4(f) and is now FED. R. CIV. P. 4(k)(1)(B).  594 F.2d at 417-418.  In coming to this conclusion, we specifically rejected the use of road miles because that standard lacks uniformity and simplicity. *Id.*  Even assuming *arguendo* that Rule 4(k)(1)(B) and 29 U.S.C. § 2611(2)(B)(ii) are similar enough to warrant comparison, it is not necessary for us to address whether the considerations discussed in *Sprow* would lead to a better rule than the one devised by the Secretary of Labor because, in a *Chevron* case like this, the only question for us is whether the Secretary's

## C.	Emotional Distress

Bellum also appeals the district court's grant of summary judgment on his pendent state claims for the intentional and negligent infliction of emotional distress.

Bellum's claim under Mississippi common law for the intentional infliction of emotional distress is subject to the one-year statute of limitations set forth at Miss. Code Ann. § 15-1-35 (Rev. 1995). *King v. Otasco, Inc.*, 861 F.2d 438, 442 (5th Cir. 1988) (making an *Erie* "guess" that the intentional infliction of emotional distress falls within the one-year statute of limitations for intentional acts; this "guess" adopted with respect to false arrest by *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1218 (Miss. 1990)); *Hervey v. Metlife Gen. Ins. Corp. Agency Sys. of Miss., Inc.*, 154 F. Supp. 2d 909, 914-915 (S.D. Miss. 2001) (surveying relevant federal and state precedent in concluding that the one-year period still applies to the intentional infliction of emotional distress). His cause of action accrued no later than March 16, 2001 when he was terminated as part of a reduction in force at FPI. Bellum did not file his complaint until March 3, 2003, nearly two years later. His claim, therefore, is barred.

Relying on *McCorkle v. McCorkle*, 811 So.2d 258, 263-264

---

construction of the statute is permissible, not the best. Having found that it is permissible, our inquiry is at an end.

(Miss. App. 2001), Bellum contends that the running of the limitations period was tolled under Mississippi's continuing tort doctrine because the effects of his termination persist into the present. This is without merit and reflects a fundamental misunderstanding of the continuing tort doctrine. Under Mississippi law, acts that take place outside the one-year statute of limitations are actionable if, and only if, they are directly connected to an ongoing pattern of tortious conduct and at least one tortious act occurred within the one-year limitations period. *Id.* at 264. The continuing tort doctrine does not apply when a plaintiff like Bellum simply alleges that "harm reverberates from one wrongful act or omission." *Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 149 (Miss. 1998).

We similarly find Bellum's claim for the negligent infliction of emotional distress to be without merit.

Employment in Mississippi is at-will. *Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999). The only exceptions to this general rule are for breach of contract or unlawful intentional acts such as terminating someone on account of his or her race. *Id.* (stating that "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting reasons only declared legally impermissible."). Bellum in effect is asking this panel to extend Mississippi common law

12

by developing an exception to the at-will rule based on mere negligence. Furthermore, in every case in which the Mississippi Supreme Court has permitted a plaintiff to recover for the negligent infliction of emotional distress, the defendant has committed some independently wrongful act or breached some other duty imposed by law or by contract. For example, in *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 295 (Miss. 1992), the policyholder prevailed on her breach of contract claim but was not entitled to punitive damages because the insurer did not act intentionally in outright bad-faith. The court nevertheless allowed her to recover for her emotional damages on the theory that it was simply unfair, though not independently tortious, for the insurer to breach the contract but not be held liable for all of the reasonably foreseeable extra-contractual consequences of its conduct such as emotional harms. *See Southwest Miss. Reg'l Med. Ctr. v. Lawrence*, 684 So.2d 1257, 1269 (Miss. 1996) (allowing emotional damages in a successful breach of contract suit); *see also First Nat'l Bank v. Langley*, 314 So.2d 324, 329 (Miss. 1975) (permitting recovery for emotional distress without a physical impact for negligent breach of duty owed by bank to agent of its customer to receive and properly credit customer's funds placed by agent in bank's night depository and to exercise reasonable care in examining depository for missing deposit). Breach of some other duty imposed by law or contract, in other

13

words, has always been shown where the Mississippi Supreme Court has allowed recovery for the mere negligent infliction of emotional distress.  Bellum, however, has not established that PCE breached a contract, or breached any duty imposed on it by law, or unlawfully discriminated against Bellum under the FMLA.[8]

This court will not use its diversity jurisdiction to "expand state law beyond its presently existing boundaries." *Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir. 1994).  That is solely the prerogative of the courts of Mississippi.  *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir.) (en banc), *cert. denied*, 478 U.S. 1022 (1986).

Bellum, therefore, is not entitled to recover under the facts of this case for the negligent infliction of emotional distress.

## Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[8] Indeed, Bellum has not shown that PCE treated him in any manner that can fairly be described as truly extreme and outrageous.  On the contrary, the record indicates that Gibson, Bellum's former boss, stayed in touch with Bellum for a few weeks after Bellum was physically able to return to work but there was no work for him at PCE.