**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KELLY HACKWORTH,

      Plaintiff - Appellant,

v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY, an Ohio
corporation; JERRY JOHNSON,
individually,

      Defendants - Appellees.

No. 05-6198

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 05-CV-11-R)**

---

Scott F. Brockman, (Stanley M. Ward and Woodrow K. Glass, on the briefs),
Norman, Oklahoma, for Plaintiff - Appellant.

Brad Leslie Roberson, (Gerard F. Pignato and R. Thompson Cooper, on the brief),
Pignato & Cooper, P.C., Oklahoma City, Oklahoma, for Defendants - Appellees.

---

Before **KELLY**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Plaintiff-Appellant Kelly Hackworth appeals from the district court's grant

of summary judgment in favor of Defendants-Appellees Progressive Casualty

Insurance Company and Jerry Johnson (collectively "Progressive") on her claim

for damages pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C.

§§ 2601-2654.  Ms. Hackworth challenges deference to a Department of Labor

("DOL") regulation defining the term "within 75 miles" located in 29 U.S.C. §

2611(2)(B)(ii).  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm due

to the failure of Ms. Hackworth to establish her FMLA claim.


## Background

Ms. Hackworth was employed at Progressive's Norman, Oklahoma

worksite as an Injury Operations Manager II when, on March 19, 2004, she

requested paid leave under the FMLA to care for her mother.  In response, Ms.

Hackworth's immediate supervisor, Jerry Johnson, told her to choose between a

demotion to an Injury Operations Manager I and a severance package.  He also

gave her three days of paid time off work to make her decision.[1]  At the end of the

three day period, however, Ms. Hackworth was approved for FMLA leave.

During her FMLA leave, on April 23, 2004, Ms. Hackworth filed a charge

of gender discrimination against Progressive with the Equal Employment

Opportunity Commission ("EEOC"), alleging that Progressive had violated her

rights under Title VII of the Civil Rights Act of 1964.  On May 20, 2004, Ms.

---

[1] The record is unclear whether Ms. Hackworth ever responded to Mr. Johnson's offer and, if so, what that response was.

Hackworth and Progressive agreed to conduct a mediation, which was to occur on June 8, 2004, in an attempt to resolve Ms. Hackworth's gender discrimination claim against the company. Meanwhile, on or about May 28, 2004, Ms. Hackworth contacted Amy Harland, Progressive's Human Resource Consultant/Manager, to express her willingness to return to work because her FMLA leave was due to expire on June 1, 2004. Ms. Harland, however, directed Ms. Hackworth not to return to work until the mediation process was complete. At the conclusion of the June 8, 2004 EEOC mediation, by agreement of the parties, Ms. Hackworth's FMLA leave was extended through the close of business on June 22, 2004.

Before the close of business on June 22, 2004, Ms. Hackworth contacted Progressive and informed it of her intention to return to work as an Injury Operations Manager I. Ms. Harland, however, informed Ms. Hackworth not to return to work because the position of Injury Operations Manager I had been eliminated. Moreover, neither Ms. Harland nor any other agent or employee of Progressive offered Ms. Hackworth equivalent work or compensation. Ms. Hackworth subsequently brought suit in the district court against Progressive pursuant to 29 U.S.C. § 2617(a)(1) claiming it violated the FMLA in failing to reinstate her to the same or a similar position upon her return from FMLA leave in violation of 29 U.S.C. § 2614(a)(1), and in retaliating against her for utilizing the FMLA to receive paid time off in violation of 29 U.S.C. § 2615(a)(1).

Progressive subsequently moved for summary judgment arguing that Ms. Hackworth was not an "eligible employee" under the FMLA because Progressive did not employ at least 50 people within 75 surface miles of Hackworth's Norman, Oklahoma worksite. Progressive admitted that at the time Ms. Hackworth began her FMLA leave it employed a combined total of 47 employees at its Norman worksite, where Ms. Hackworth was employed, and its Oklahoma City worksite, which is within 75 surface miles of its Norman worksite.[2] Progressive also admitted that it employed three additional employees at its Lawton, Oklahoma worksite but submitted evidence that that worksite is not within 75 surface miles of the Norman worksite. In opposition to summary judgment, Ms. Hackworth submitted evidence that the Lawton worksite is 75.6 surface miles[3] and 67 linear miles from the Norman worksite. Ms. Hackworth argued that the distance between the Lawton and Norman worksites should be measured "as the crow flies," i.e. in linear miles, and therefore 67 miles is the appropriate distance by which to measure the geographic proximity of the two

___

[2] Specifically, Progressive admitted that its Oklahoma City worksite is 31.47 surface miles from its Norman worksite.

[3] Progressive submitted evidence that the Lawton worksite is 79.8 surface miles from the Norman worksite, rather than the 75.6 miles that Ms. Hackworth alleges. Neither party adduced evidence that the distance between the Lawton and Norman worksites is less than 75 surface miles. Because on summary judgment we view the evidence in the light most favorable to the nonmoving party, Oliveros v. Mitchell, 449 F.3d 1091, 1095 (10th Cir. 2006), we will assume for purposes of this appeal that the Lawton worksite is indeed 75.6 surface miles from the Norman worksite.

worksites. Thus, she argued that at the time her FMLA leave commenced Progressive employed 50 people within 75 miles of her worksite and she was an "eligible employee" under the FMLA.

The district court granted summary judgment to Progressive, holding that a DOL regulation, 29 C.F.R. § 825.111(b) (1995), which states that the 75-mile distance must be measured in surface miles, was owed judicial deference. This appeal followed. On appeal, Ms. Hackworth argues that: (1) Congress clearly intended that a "radius test," i.e. linear miles, be used when determining whether two worksites are "within 75 miles" of each other; (2) the DOL's use of a surface mile test is arbitrary and capricious; (3) 75.6 miles should be considered to be "within 75 miles"; (4) even assuming the Lawton worksite is not "within 75 miles" of the Norman worksite, the distance over 75 miles is so small that the court should nonetheless hold that Ms. Hackworth is an "eligible employee"; and (5) the district court abused its discretion in refusing to grant Ms. Hackworth additional time to conduct discovery.

## Discussion

I.    Standard of Review

Because the district court granted Progressive's motion for summary judgment, our review is de novo and we apply the same standards as the district court. Adamson v. UNUM Life Ins. Co., 455 F.3d 1209, 1212 (10th Cir. 2006).

That is, summary judgment is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Moreover, we review a district court's decision regarding the validity of an agency regulation de novo. Reames v. Oklahoma ex. rel. OK Health Care Auth., 411 F.3d 1164, 1168 (10th Cir. 2005).

II.     The Statutory and Regulatory Framework

The FMLA, 29 U.S.C. §§ 2601-2654, was enacted, in part, "to balance the demands of the workplace with the needs of families . . . [and] to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." Id. at § 2601(b). The FMLA therefore requires covered employers to provide eligible employees with up to twelve weeks of unpaid, job-protected medical leave per year, among other things, to care for a parent of the employee with a serious health condition. See id. § 2612(a)(1)(C). However, in furtherance of the balance between the needs of employees and the interests of employers, Congress included two exceptions to the FMLA's coverage. First, Congress excluded those employers with fewer than 50 total employees. See id. § 2611(4)(A)(i). Second, Congress excluded from the FMLA's coverage those employees whose employer employs fewer than 50 people "within 75 miles" of the employee's worksite ("the 50/75 provision").[4]

_____

[4] If an employer does not employ at least 50 people "within 75 miles" of an individual's worksite, that individual is not an "eligible employee" for FMLA purposes. See 29 U.S.C. § 2611(2)(B). Despite Progressive's contention,

See id. § 2611(2)(B)(ii). Congress recognized that, given these two exceptions, the FMLA would only cover approximately "5 percent of U.S. employers and 40 percent of U.S. employees." S. Rep. No. 102-68, at 24 (1991); see also H.R. Rep. No. 102-35(I), at 37 (1991).

Congress, in the FMLA, also expressly granted the Secretary of Labor the power to "prescribe such regulations as are necessary to carry out [the FMLA]." 29 U.S.C. § 2654. Pursuant to this grant of power, the DOL promulgated a regulation, in part, to clarify the method to use in determining whether two worksites are "within 75 miles" of one another, which provides:

> The 75-mile distance is measured by surface miles, using surface transportation over public streets, roads, highways and waterways, by the shortest route from the facility where the eligible employee needing leave is employed. Absent available surface transportation between worksites, the distance is measured by using the most frequently utilized mode of transportation (e.g. airline miles).

29 C.F.R. § 825.111(b) (1995).[5] The primary question we must resolve in this

---

however, one's failure to qualify as an "eligible employee" does not mean this court lacks subject matter jurisdiction. See Arbaugh v. Y&H Corp., 126 S. Ct. 1235, 1245 (2006) ("[T]he threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."); Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 357 (5th Cir. 2006) ("Arbaugh has clearly rejected the conflicting view of the Courts of Appeals . . . that employee-numerosity requirements in the FMLA and other statutes are jurisdictional rather than simply an element of a plaintiff's claim for relief.").

[5] Additionally, 29 C.F.R. 825.110(f) (1995) provides that "[w]hether 50 employees are employed within 75 miles to ascertain an employee's eligibility for FMLA benefits is determined when the employee gives notice of the need for leave."

appeal is whether § 825.111(b) is a valid regulation implementing the FMLA.

III.    Judicial Deference to 29 C.F.R. § 825.111(b)

Ms. Hackworth challenges the DOL regulation clarifying that surface miles are to be used in determining whether two worksites are "within 75 miles" of one another. The standard to be used in analyzing an agency's construction of a statute it administers, articulated by the Supreme Court in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), is well-known and oft-applied. Pursuant to Chevron, we must analyze such a construction in a two-step process. Id. at 842-44. First, we look to whether Congress directly spoke to the precise question at issue. Id. at 842. In so doing, we look to, among other things, the statutory text, history, and purpose. See Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004). If congressional intent is clear on the precise question at issue, our analysis ends and the congressional intent is given effect. Chevron, 467 U.S. at 842-43. This follows from the fact that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Id. at 843 n.9.

If congressional intent is ambiguous, we proceed to the second step in the Chevron analysis and look to "whether the agency's answer is based on a permissible construction of the statute." Id. at 843. Because administrative agencies are ordinarily more adept at reconciling conflicting policies within their

areas of expertise than are courts, we uphold an agency's construction of a statute it administers so long as it is not arbitrary, capricious, or manifestly contrary to the statute at issue. Id. at 844; Harbert v. Healthcare Servs. Group, 391 F.3d 1140, 1147 (10th Cir. 2004).

A.    *Chevron Step One*

As previously mentioned, Chevron first demands that we determine whether Congress clearly spoke as to the method to be used in ascertaining whether two worksites are "within 75 miles" of one another. 467 U.S. at 842. Ms. Hackworth argues that Congress clearly spoke on this precise issue in that the House and Senate Reports accompanying the FMLA, in several instances, provide that the aggregation of employees at geographically distinct worksites is limited to those facilities within a "75-mile radius." Ms. Hackworth contends that use of the word "radius" demonstrates that Congress clearly meant for a linear mileage test to be used, rather than a surface mileage test. The text and purpose of the 50/75 provision, however, belie Ms. Hackworth's argument.

Congress did not expressly indicate in 29 U.S.C. § 2611(2)(B)(ii) how one should measure the geographic proximity of two distinct worksites. That subsection simply states that two worksites must be "within 75 miles" of one another, and is devoid of the word "radius" that Ms. Hackworth finds so crucial. While the term "within 75 miles" is not inherently ambiguous, Bellum v. PCE Constructors, Inc., 407 F.3d 734, 739 (5th Cir. 2005), this case itself demonstrates

that reasonable people may differ on the term's meaning. In fact, at oral argument, Ms. Hackworth's counsel conceded that congressional intent is not clear from the text of § 2611(2)(B)(ii) standing alone. The FMLA also does not otherwise indicate how the geographic proximity of two worksites should be measured. Thus, Congress did not express its clear intent with regard to the precise question at issue in the statutory text.

Turning to statutory purpose, as previously noted, the FMLA was enacted, in part, "to balance the demands of the workplace with the needs of families . . . [and] to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b). In striking this balance, Congress provided an exception to the FMLA's coverage "for small operations - that is, a potentially large company with a relatively small satellite office in a particular area." Harbert, 391 F.3d at 1148 (discussing 29 U.S.C. § 2611(2)(B)(ii)). The 50/75 provision was specifically designed to accommodate employer concerns about "the difficulties an employer may have in reassigning workers to geographically separate facilities." H.R. Rep. No. 102-135(I), at 37 (1991); see Moreau v. Air France, 356 F.3d 942, 945-46 (9th Cir. 2004) ("[I]t might be reasonable to expect an employer to relocate workers from nearby facilities for the period of an FMLA leave . . ., but it would be understandably more difficult to reassign an employee whose family lives in Los Angeles to work in San Francisco for three months.").

Given the statutory purpose of the FMLA and the 50/75 provision, it does not appear that Congress clearly intended that the geographic proximity of two worksites is to be measured in linear miles. In fact, the statutory purpose for the 50/75 provision indicates that Congress just as likely intended a surface measurement to be utilized. The difference in the time and cost of transportation between a covering employee's home worksite and a new, temporary worksite is a significant impediment to employers with far-flung operations in covering for employees who take FMLA leave. While in many instances the geographic proximity of two worksites measured in linear miles is an adequate proxy for the feasability of transferring employees between those worksites, there are a few circumstances in which a linear measurement is deceiving. See Bellum, 407 F.3d at 739 (giving an example of a company that is forced to transfer employees between offices on the north and south rims of the Grand Canyon). On the other hand, the distance between two worksites measured in surface miles is nearly always a reasonable proxy for the feasibility of temporarily relocating an employee to another worksite because "the overwhelming majority of workers in this country use surface transportation to get to work . . . ." Id. at 740. As a result, the 50/75 provision's statutory purpose does not support the use of one measurement more than the other.

Ms. Hackworth correctly points out that Congress, on numerous occasions in both the House and Senate Reports accompanying the FMLA, states that an

- 11 -

employer must, in order to be covered by the FMLA, employ at least 50 people "within a 75 mile radius." See, e.g., H.R. Rep. 102-35(I), at 37 (1991) ("[T]here is a geographic limitation of a 75-mile radius that applies to the aggregation of employees at different facilities." (emphasis added)); S. Rep. No. 103-3, at 2 (1993) ("The employer must, in addition, employ at least 50 people within a 75-mile radius of the employee's worksite." (emphasis added)). For two reasons, we conclude that this does not evidence a clear congressional intent that the 75-mile distance be measured "as the crow flies." First, while the House and Senate Reports include the term "radius" on several occasions, they also omit the term numerous times. See, e.g., H.R. Rep. No. 102-35(I), at 54 (1991) ("Title I would not apply to any employer of less than 50 workers if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." (emphasis added)); S. Rep. No. 102-68, at 45 (1991) ("The employees at . . . a worksite are not covered by the bill if the total number of those employed by the employer within 75 miles of the worksite is less than 50." (emphasis added)). This irregular use of the term is not sufficient to evidence a clear congressional intent. See Miller v. Comm'r, 836 F.2d 1274, 1282 (10th Cir. 1988) ("Though legislative history may be examined as a secondary source of a statute's meaning, the weight such history is given in construing a statute may vary according to factors such as whether the legislative history is sufficiently specific, clear and uniform to be a reliable indicator of intent."). Second, there is

- 12 -

nothing in the legislative history to indicate that Congress, in the few instances in which it used the term "radius," was using that term in a technical, rather than a colloquial, sense. Consequently, we find more persuasive that Congress did not define a method of measuring the geographic proximity of two worksites and therefore left an implicit statutory gap that 29 U.S.C. § 2654 authorizes the Secretary of Labor to fill.

B. *Chevron Step Two*

When Congress leaves an implicit statutory gap, we simply ask "whether the [regulation] is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. Because invalidating an agency regulation is strong medicine, we will only do so when the regulation is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 844. "[T]he agency's interpretation need not be the only one it could have adopted, or the one that this court would have reached had the question initially arisen in a judicial proceeding." Anderson v. U.S. Dep't of Labor, 422 F.3d 1155, 1181 (10th Cir. 2005) (quoting Salt Lake City v. W. Area Power Admin., 926 F.2d 974, 978 (10th Cir.1991)).

Several factors support the reasonableness of 29 C.F.R. § 825.111(b) and lead us to conclude that it is consistent with the FMLA. First, the regulation represents a plausible and reasonable reading of the term "within 75 miles" contained in 29 U.S.C. § 2611(2)(B)(ii). Second, as noted, the regulation furthers the 50/75 provision's purpose in that a surface measurement is a reasonable proxy

for judging an employer's ability to relocate an employee from one worksite to another in order to cover for an employee on FMLA leave. The FMLA recognizes that "if any employer (large or small) has no significant pool of employees nearby to cover for an absent employee, that employer should not be required to provide FMLA leave to that employee." Harbert, 391 F.3d at 1149. The use of surface miles is a fair, reasonably accurate and commonly-understood method of determining whether an employer has a significant pool of substitute workers nearby. Third, the regulation is not crafted in such a way that it unreasonably favors employers over employees. Rather, the regulation rationally furthers the FMLA's goal "to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b). Finally, the only one of our sister circuits to consider the issue before us, the Fifth Circuit, has upheld 29 C.F.R. § 825.111(b) as consistent with the FMLA. See Bellum, 407 F.3d at 740 (holding that 29 C.F.R. § 825.111(b) is entitled to Chevron deference).

In an attempt to demonstrate that a surface measurement is arbitrary and capricious, Ms. Hackworth proffers several "real-world example[s]." First, she argues that 29 C.F.R. § 825.111(b) operates in an arbitrary manner because "leave under [the] FMLA literally depends on how straight a road is." Aplt. Br. at 12. Ms. Hackworth points out that a company's employees could be ineligible for FMLA leave simply because they have the misfortune of being employed with a

company whose worksites are located on a road that "zigs and zags." Ms. Hackworth also suggests that § 825.111(b) is arbitrary because an employee may suddenly lose eligibility for FMLA leave when a detour is created because a route between two worksites comes under construction, thereby rendering the driving distance between the two points greater than 75 surface miles. Finally, Ms. Hackworth points out that employees working in heavily populated areas are more likely to be eligible for FMLA leave under the DOL regulation than those working in sparsely populated areas, as a result of the greater number of public roads available to employees working in heavily populated regions.

Although Ms. Hackworth is correct that an employee's eligibility for FMLA leave could conceivably vary depending on how straight a particular road is, whether a particular road is under construction, or how many public roadways are located in a particular region, that does not render § 825.111(b) arbitrary and capricious. Rather, we see no reason why such considerations should not be factored into the eligibility calculus given the balance the FMLA strikes between the needs of an employee and the employer. Because the 50/75 provision was intended to protect employers who do not have a sufficient source of substitute employees nearby to cover for an absent employee, it is only logical that conditions which negatively affect the viability of moving an employee from one worksite to another may well come into play. This is true even if conditions such as the straightness of an interstate or the presence of road construction may be

occasionally determinative of an employee's eligibility status.

Finally, at oral argument, Ms. Hackworth's counsel argued that the arbitrariness of § 825.111(b) is demonstrated by the fact that courts, in analyzing the 100-mile limitation on service of process contained within Fed. R. Civ. P. 4(k) and in determining the relevant geographic market for antitrust liability purposes under the Sherman Act, measure distance "as the crow flies." See Sprow v. Hartford Ins. Co., 594 F.2d 412, 417-18 (5th Cir. 1979) (holding that distance for purposes of Fed. R. Civ. P. 4[(k)] is to be measured "as the crow flies"); Pierce v. Globemaster Baltimore, Inc., 49 F.R.D. 63, 66 (D. Md. 1969) (same); Gordon v. Lewistown Hosp., 423 F.3d 184, 212 (3d Cir. 2005) (holding that the district court's use of a linear measurement in crafting the relevant geographic market was not clearly erroneous). This argument, though creative, is unavailing. The statutory purpose underlying the 50/75 provision and those underlying Fed. R. Civ. P. 4(k) and the Sherman Act are certainly not the same; therefore, the type of geographic measurement used with regard to Fed. R. Civ. P. 4(k) and the Sherman Act has little or no relevance to which measurement should be used with regard to the 50/75 provision. Moreover, even assuming the purposes underlying the three were similar, the question we must answer pursuant to Chevron is not whether we would employ a surface measurement in the first instance, see Bellum, 407 F.3d at 740 n.7 ("[T]he only question for us is whether the Secretary's construction of the statute is permissible, not the best."), but whether the DOL's use of a surface

- 16 -

measurement is arbitrary, capricious, or contrary to the FMLA. We hold it is not.

Thus, Ms. Hackworth, in order to survive summary judgment, was required to produce evidence tending to show that Progressive employed at least 50 employees within 75 surface miles of its Norman worksite. Because Ms. Hackworth failed to rebut Progressive's evidence that it only employed 47 individuals within 75 surface miles of its Norman worksite, we affirm the district court's grant of summary judgment to Progressive because, at the time Ms. Hackworth requested FMLA leave, she was not an "eligible employee."

IV.    Additional Arguments Regarding Eligibility

Ms. Hackworth makes two additional arguments in support of her eligibility for FMLA leave notwithstanding the 50/75 provision. First, she argues that the 75.6 surface mile distance between Progressive's Norman and Lawton worksites should be considered "within 75 miles," thereby rendering her eligible for FMLA leave. The common meaning, however, of the word "within" as being "below the number or amount mentioned" contradicts Ms. Hackworth's argument. Oxford English Dictionary Online (from the 2d print ed. 1989). In using the term "within 75 miles," Congress, at most, intended that, in order to be an eligible employee, one's employer must employ an aggregate of at least 50 people at worksites which are a distance of 75 miles or less from one another. Being that the Norman worksite is 75.6 surface miles away from the Lawton worksite, those two worksites cannot be considered "within 75 miles" of one another.

Second, Ms. Hackworth asserts that the intent of the 50/75 provision "is not advanced by its application in this matter," and consequently, she requests that we make an exception in this case and find that she is an eligible employee. She contends that application of the mileage limitation in this case does not advance the intent of the 50/75 provision because "Progressive is [in] no way prejudiced by conceivably having a Lawton employee drive an extra six-tenths of a mile to fill in for Hackworth at the Norman site" and because "Progressive could have filled Hackworth's position . . . with an employee from any of the offices in Oklahoma, . . . because the Norman site was not essential to Hackworth's job duties." Aplt. Br. at 21, 22. Even assuming, without deciding, that the intent of the 50/75 provision is not furthered by its application in this case, that in no way changes the fact that Congress included the 50/75 provision in the FMLA as a limitation on the class of eligible employees, and that the authority to create an additional exception to that provision lies with Congress, not the courts. See Special Devices, Inc. v. OEA, Inc., 270 F.3d 1353, 1357 (Fed. Cir. 2001) ("If [] an exception is to be created, Congress, not this court, must create it."); United States v. Petrov, 747 F.2d 824, 826 (2d Cir. 1984) ("[W]e think it is for [C]ongress, and not this court, to create exceptions to [a] statute's clearly expressed, broad coverage.").

V.    Additional Time for Discovery

Ms. Hackworth alternatively requests that we reverse the district court's

- 18 -

decision and remand the case so that she may conduct additional discovery. Ms. Hackworth contends that the district court abused its discretion in denying her request for additional discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure because (1) additional discovery is needed to ensure that all of Progressive's Oklahoma employees are accounted for and (2) the difference between her eligibility and non-eligibility is only three employees. Ms. Hackworth admits, however, that she failed to file an affidavit pursuant to Rule 56(f) in response to Progressive's motion for summary judgment. In an effort to convince us that she fully complied with Rule 56(f)'s dictates, Ms. Hackworth instead relies on statements made in her response brief to Progressive's motion for summary judgment and on an affidavit attached to her motion for reconsideration following the district court's grant of summary judgment. We must, therefore, determine whether these actions were sufficient to satisfy Rule 56(f) and whether the district court abused its discretion in denying additional discovery. See Price ex. rel. Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000) (holding that a district court's decision to deny relief under Rule 56(f) is reviewed for an abuse of discretion).

Rule 56(f) grants a court discretion to deny summary judgment or order a continuance when the nonmovant submits an affidavit averring that it possesses

insufficient facts to oppose a summary judgment motion. Fed. R. Civ. P. 56(f).[6]

The crux of Rule 56(f) is that "summary judgment [should] be refused where the

nonmoving party has not had the opportunity to discover information that is

essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

n.5 (1986). The nonmoving party, however, must expressly invoke Rule 56(f)'s

protections and, in so doing, must satisfy certain requirements. Price, 232 F.3d at

783. More specifically, the nonmovant must submit an affidavit "identifying the

probable facts not available and what steps have been taken to obtain these facts"

and must "explain how additional time will enable him to rebut movant's

allegations of no genuine issue of fact." Comm. for the First Amendment v.

Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).

Here, Ms. Hackworth's statements, made in her response brief to

Progressive's motion for summary judgment, to the effect that she "has not had a

chance to review Progressive's payroll records to determine if the [employee]

number represented . . . is correct or incorrect," are obviously insufficient to

_____

[6] Rule 56(f) specifically provides:

Should it appear from the affidavits of a party opposing the motion
that the party cannot for reasons stated present by affidavit facts
essential to justify the party's opposition, the court may refuse the
application for judgment or may order a continuance to permit
affidavits to be obtained or depositions to be taken or discovery to
be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

comply with Rule 56(f).  Cf. Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986) (holding that the statement "Although discovery has not yet been completed . . ." contained within the nonmovant's response brief was insufficient to comply with Rule 56(f)).  These statements are not contained within an affidavit, do not explain what steps have already been taken to obtain information regarding the accuracy of Progressive's stated employee number, and do not explain how additional time will enable Ms. Hackworth to oppose Progressive's summary judgment motion.  See Campbell, 962 F.2d at 1522 ("[C]ounsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver.").

Similarly, the affidavit of Ms. Hackworth's counsel attached to her motion for reconsideration, which was filed following the district court's grant of summary judgment, is ineffectual because it was untimely.  A nonmoving party wishing to invoke the protections of Rule 56(f) must attempt to do so by submitting an affidavit in direct response to a motion for summary judgment, not following the district court's disposition of that motion.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998) ("[T]he nonmovant must carry its burden in the district court in a timely fashion pursuant to Rule 56(e) and Celotex or explain why it cannot pursuant to Rule 56(f).  Otherwise, the nonmovant acts, or fails to act, at its peril." (internal citation omitted)).  Rule 56(f) grants the district court the power to either deny a summary judgment motion or order a

continuance; it does not grant the power to vacate a prior grant of summary judgment so that additional discovery can be conducted. See Fed. R. Civ. P. 56(f). Because Ms. Hackworth's statements in her response brief to the motion for summary judgment did not comply with Rule 56(f)'s requirements and the Rule 56(f) affidavit her counsel submitted was untimely, we conclude that the district court did not abuse its discretion in refusing to grant Ms. Hackworth additional time for discovery.[7] See Pasternak, 790 F.2d at 832-33 ("Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate.").

AFFIRMED.

---

[7] In arguing that the district court prematurely granted summary judgment, Ms. Hackworth cites Weir v. Anaconda Co., 773 F.2d 1073, 1081-82 (10th Cir. 1985), inter alia, for the proposition that a party "should be given sufficient time to conduct discovery where relevant facts are exclusively in the control of the opposing party." Aplt. Reply Br. at 5. Ms. Hackworth, however, omits the Weir court's statement that, "There is no requirement in Rule 56, Fed. R. Civ. P., that summary judgment not be entered until discovery is complete." 773 F.2d at 1081. The Weir court additionally observed that "[i]n the absence of a Rule 56(f) affidavit, other courts have generally upheld the grant of summary judgment before the completion of discovery." Id. at 1083 n.10. Finally, whether evidence is within the exclusive control of the opposing party only becomes a factor, and not a controlling one, where the nonmovant timely submits an affidavit which fully complies with Rule 56(f). See id. at 1083. Ms. Hackworth never submitted such an affidavit.