BRISCOE, Circuit Judge,
dissenting:
I respectfully dissent. I would affirm the district court’s dismissal of the plaintiffs’ Administrative Procedures Act and Fifth Amendment claims. I disagree with the majority’s conclusion that the phrase “services rendered” contained in 42 U.S.C. § 2210 note 9 unambiguously refers only to attorney fees incurred in' connection with a successful Radiation Exposure Compensation Act (RECA) claim, and does not also include expenses. Instead, I conclude that the phrase “services rendered” is ambiguous, and that the Attorney General’s interpretation of the phrase to include expenses within the definition of “services rendered” as set forth in 28 C.F.R. § 79.74(b), is a permissible construction of that language.
As the majority’s opinion correctly notes, the two-step analysis outlined in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) determines the outcome of this case. The first Chevron step requires us to ask “whether Congress has directly spoken to the precise question at *1242 issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Id. at 842-43, 104 S.Ct. 2778. The precise question at issue in this case is whether attorneys may recover full reimbursement of expenses incurred in preparing a claim under the RECA when the amount of those expenses, when combined with attorney fees, exceeds RECA’s two-percent cap on attorney compensation. The majority mistakenly concludes that the two-percent cap on payments to attorneys “for services rendered in connection with” a RECA claim in no way limits an attorney’s reimbursement in full for expenses incurred in preparing the claim. 42 U.S.C. § 2210 note Sec. 9 (emphasis added).
Looking first at the statute’s plain text, RECA neither defines “services rendered” nor makes clear that compensation for “services rendered” would include expenses. The statute is simply silent as to what activities Congress would include within its definition of “services rendered.” The majority is correct that “services rendered” could be interpreted to mean only those actions involving legal skills, such as filling out forms, obtaining the proper supporting documents, and providing legal advice. At the same time, the defendants are also correct that the term might additionally include the expenses incurred in the preparation of a RECA claim. If the “service” being “rendered” is the preparation of a complete RECA application, then obtaining necessary documentation and medical reports to prove injury is an inseparable and necessary component of that service. When a client subsequently repays an attorney for the expenses incurred in procuring this supporting documentation, then the attorney has received a payment for the service rendered of compiling that documentation. The statute fails to directly address which view of “services rendered” is correct, either by defining the term or contrasting it with expenses. While the majority doubts whether RECA’s “services rendered” language can be plausibly interpreted to include expenses incurred in obtaining necessary documentation, its skepticism rests mainly on its interpretation of the term “service” as excluding expenses incurred in obtaining necessary documentation, and that a contrary interpretation of the term “service” will have negative policy consequences. The majority’s interpretation of “service,” while reasonable, does not rest upon any express statement of congressional intent.
Nor does the statute’s legislative history furnish the necessary clarity. The congressional reports and debates accompanying RECA fail to tackle this issue or shed light on how Congress would resolve the differing interpretations proffered by the parties. Further, the statute’s purpose— “to make partial restitution” to victims of radiation exposure — points in no clear direction. The majority’s interpretation of “services rendered” may promote that goal by increasing the likelihood that individuals wishing to file a RECA claim will have access to effective counsel. While at the same time, the defendants’ interpretation of “services rendered” may also further that goal by ensuring that victims receive ninety-eight percent of their award without qualification. Therefore, because the phrase “services rendered” is subject to differing interpretations, it is ambiguous and the proper course is to defer to the agency’s interpretation if it is reasonable. Bd. of County Comm’rs v. United States EEOC, 405 F.3d 840, 845 (10th Cir.2005).
To fill the definitional void presented, the majority relies on two sources. First, it points to dictionary definitions. Second, it points to other fee-shifting statutes. As regards the dictionary definitions, the ma *1243 jority notes that “services” is defined as “the performance of any duties or work for another” and “expenses,” is defined in part, as “money paid as reimbursement for such charges_” (Maj. Op. At 1233-34). From this starting point, the majority classifies an expense as a mere reimbursement for a charge rather than compensation for an attorney’s work (a service).
If our responsibility under Chevron’s initial step was to give meaning to an unclear statutory phrase, I might find the majority’s analysis compelling. Instead, our task is to determine whether “services rendered” unambiguously conveys congressional intent regarding the treatment of expenses within the RECA’s statutory framework. It is true that the ordinary meaning of words, as embodied in dictionary definitions, may provide “some guidance” as to what Congress intended. Anderson v. United States DOL, 422 F.3d 1155, 1180-82 (10th Cir.2005). Yet we have never held that a dictionary definition, standing alone, will control when Congress has otherwise failed to make its intent known. See, e.g., id. at 1182 (determining that the phrase “authorized representative” was “far from clear” because the phrase’s plain meaning, as discovered in dictionaries, failed to answer the issue before the court); Biodiversity Legal Found, v. Babbitt, 146 F.3d 1249, 1254 (10th Cir.1998) (concluding that the phrase “ ‘maximum extent practicable’ ... remain[ed] ambiguous because neither the statutory language nor its ordinary meaning specifie[d]” what Congress meant). While a dictionary definition may allow us to make an educated guess about Congress’ intent, the statute’s essential opacity prevents us from reaching a more definitive conclusion.
The majority next compares § 2210 to other fee-shifting statutes which clearly make a distinction between “services rendered” and “expenses.” For instance, 11 U.S.C. § 503(b)(4) provides: “After notice and a hearing, there shall be allowed, administrative expenses, ... including ... reasonable compensation for professional services rendered by an attorney .... and reimbursement for actual, necessary expenses incurred by such attorney or accountant.” (emphasis added). But instead of leading us to a clearer understanding of what Congress meant by “services rendered” in the statute at hand, statutes like these highlight what § 2210 lacks: a clear expression of congressional intent which separates “services rendered” from “expenses.” The majority’s examples demonstrate that Congress knows how to distinguish fees from expenses when it wishes, but yet it clearly failed to do so here. At most, the majority’s comparison of § 2210 with other fee-shifting statutes may lend support to interpreting “services rendered” as a concept distinct from “expenses.” But these comparisons do not provide us with an unambiguous indication of what Congress intended when it used the phrase “services rendered” in § 2210.
As § 2210 is ambiguous, the Attorney General’s regulation, 28 C.F.R. § 79.74(b), survives our review if it is a “permissible” interpretation. Anderson, 422 F.3d at 1182. “[W]e uphold an agency’s construction of a statute it administers so long as it is not arbitrary, capricious, or manifestly contrary to the statute at issue.” Hackworth v. Progressive Cas. Ins. Co., 468 F.3d 722, 727 (10th Cir.2006) (citation omitted). As explained above, the phrase “services rendered” can be reasonably interpreted to include expenses. When a client repays an attorney for expenses incurred in completing a RECA application, the attorney has received a payment for his services in collecting and attaching the necessary documentation. As the Attorney General concluded, “[ojbtaining and submitting the documentation necessary to substantiate a claim is a large part of the *1244 ‘service’ rendered to a client.” Representatives and Fees, 69 Fed.Reg. 13628, 13633 (Mar. 23, 2004).
In addition, the challenged regulation is based on close examination of the interests at play. The Attorney General concluded that allowing full recovery of costs and expenses would compensate attorneys for services — such as gathering necessary documentation — that the Department of Justice already provides to claimants. Id. As a result, the import of the challenged regulation is to maximize the award given to claimants or eligible beneficiaries. Id. The challenged regulation also expresses skepticism, apparently shared by Congress, as to the value that attorneys actually bring to this particular process. Id.
Because 28 C.F.R. § 79.74(b) is a permissible interpretation of 42 U.S.C. § 2210 note Sec. 9’s compensation provision, I would affirm the district court’s dismissal of the plaintiffs’ claims.