**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM SAMUEL MCLEAN,
JR.,

Plaintiff-Appellant,

v.

DR. STEVEN R. CLOUGH, O.D.,

Defendant-Appellee.

No. 07-1094
(D. Colorado)
(D.C. No. 04-cv-02440-ZLW-MJW)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges,

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G).

William McLean, a federal prisoner proceeding pro se, appeals the district

court's dismissal of his complaint filed pursuant to *Bivens v. Six Unknown Named*

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971).  Mr. McLean alleged that Dr. Steven Clough, O.D., during a routine eye examination, acted with deliberate indifference when he administered a visual field test that caused Mr. McLean to suffer permanent stroke-like symptoms.  The magistrate judge, after reviewing the opinion of Dr. Clough's expert witness, recommended that the district court grant his motion for summary judgment.  The district court accepted this recommendation.  We have jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. BACKGROUND

Mr. McLean has epilepsy, and, according to his complaint, has suffered seizures that trigger stroke-like symptoms.  Before the actions underlying this complaint, Mr. McLean suffered such a seizure on July 8, 2002.

On March 16, 2004, while housed at the United States Penitentiary, Administrative Maximum ("ADX"), in Florence, Colorado, Mr. McLean saw Dr. Clough for an eye appointment.  Mr. McLean contends that Dr Clough had reviewed his medical records, which explained his history of epilepsy and stroke-like symptoms.  Mr. McLean also contends that he discussed his medical condition, including his medications, with Dr. Clough.

As part of the examination, Dr. Clough performed a visual field mapping test on Mr. McLean.  The computerized test, which involves flashes on a computer screen, measures peripheral vision.  Mr. McLean contends that while

taking the test on his left eye, he recalls saying, "I can't do this" and laying his head in his lap and hands. Rec. vol. I, doc. 3, at 4-D.

Mr. McLean next recalls waking up from a seizure and being treated by ADX's clinical director Dr. Lawrence L. Leyba. Mr. McLean contends that the seizures resulted in stroke-like symptoms to his left side, including the requirement of a left leg brace, weakness in his left arm, decreased control over his bowel and bladder, impotence, and pain and numbness in his left hip. After exhausting his administrative remedies as to his claims against Dr. Clough, Mr. McLean filed a complaint seeking $1,000,000 in damages. Before us, Mr. McLean maintains he has also suffered brain damage and is mentally deficient as a result of the seizure.

The district court denied Dr. Clough's motion to dismiss, appointed counsel, and the parties proceeded through discovery. Mr. McLean became dissatisfied with his appointed counsel, and the court granted counsel's motion to withdraw.

The magistrate judge determined that the Eighth Amendment claim was "sufficiently sophisticated such that expert testimony is required." Rec. vol. II, doc. 150, at 12. Thomas A. Politzer, O.D., Dr. Clough's expert witness, opined that "[v]isual field testing is generally regarded as safe" and that "there is no evidence, or history of automated visual field testing causing a seizure reported in the literature." *Id*. vol. I, doc. 115, ex. B. Dr. Politzer concluded that "Dr.

Clough . . . provided appropriate medically indicated care, and he met [the] standard of care." *Id.*

Dr. Leyba also testified that he recommended visual field testing as part of a thorough ophthalmologic examination to help determine whether there was an embolic phenomena or vascular problem that might contribute to Mr. McLean's seizures. *Id.* doc. 124, ex. A at 6. Mr. McLean did not put forth any experts. The magistrate judge recommended granting Dr. Clough's motion for summary judgment. After giving Mr. McLean extra time to file objections to the report and recommendation, the district court reviewed the objections, and adopted the magistrate judge's recommendation. Mr. McLean timely appealed.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006). Summary judgment is appropriate only where there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

The Eighth Amendment creates an obligation on the part of prison officials to provide adequate health care to inmates. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This does not mean, however, that a mere complaint that a physician has been negligent in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment. *Id.* at 105-06. "[A]

-4-

prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

The test for constitutional liability of prison officials "'involves both an objective and a subjective component.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). To satisfy the objective component, a plaintiff must show that the "medical need is sufficiently serious," *Mata*, 427 F.3d at 751, "and that the Defendant['s] [inadequate care or] delay in meeting that need caused him substantial harm[.]" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir.2001) (quotations and footnote omitted). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (internal quotation marks omitted).

> The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.

-5-

*Id.* (internal quotation marks and citations omitted).

We affirm the grant of summary judgment to Dr. Clough for substantially the same reasons as set forth in the magistrate judge's report and recommendation. Recognizing that Mr. McLean has suffered substantial harm, the likelihood for that harm to result from the administration of the visual field test was not obvious and there is no evidence that Dr. Clough was deliberately indifferent. As the magistrate judge noted:

> The doctor reviewed the complaints plaintiff presented to Dr. Clough, the exam notes, and plaintiff's history. In addition, he stated the factors which are appropriate criteria for conducting the test and opined that the testing is generally regarded as safe and that there are no contra-indications with the possible exception of patients with a known history [of] reflex photo-sensitive seizure during automated visual field testing, which plaintiff did not possess. Furthermore, he stated that there is "no evidence, or history of automated visual field testing causing a seizure reported in the literature." In fact, he reported that visual field testing is protocol prior to starting certain new generation anti-seizure medications and is done at regular, frequent intervals during their use. Finally, he noted that during the examination by Dr. Clough, plaintiff presented with a history of head injury, stroke, and migraine, and the exam was noteworthy for narrow angles. Dr. Politzer opined that "[a]ny one of these significant issues alone would mandate visual field testing."

Rec. vol. II, doc. 150, at 12-13.

Thus, even construing Mr. McLean's pleadings liberally as we must, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and viewing the well-pleaded facts in his favor, he cannot establish that Dr. Clough was deliberately indifferent to his medical needs when he administered the field vision test.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Dr. Clough. Mr. McLean is reminded to continue making partial payments of his appellate filing fee until the entire balance is paid.

Entered for the Court,


Robert H. Henry
United States Circuit Judge