**F I L E D**

<u>PUBLISH</u>

**August 2, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICIA ADAMSON,

        Plaintiff - Appellant,

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA, a Maine
Corporation,

        Defendant - Appellee.

No. 04-4203

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:98-CV-286-PGC)**

---

Brian S. King, Attorney at Law, Salt Lake City, Utah, for Plaintiff - Appellant.

Scott M. Petersen (and David N. Kelley, on the brief), Fabian & Clendenin, Salt Lake City, Utah, for Defendant - Appellee.

---

Before **KELLY**, **LUCERO**, Circuit Judges, and **EAGAN**,[*] District Judge.

---

**KELLY**, Circuit Judge.

---

[*]The Honorable Claire V. Eagan, District Judge, United States District Court of the Northern District of Oklahoma, sitting by designation.

Plaintiff-Appellant Patricia Adamson appeals from the district court's grant of summary judgment in favor of Defendant-Appellee UNUM Life Insurance Company of America ("UNUM"). Mrs. Adamson was a participant in an employee benefit plan sponsored by her employer and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The plan offered life insurance coverage to eligible employees and their spouses/dependents through UNUM. After the accidental death of her husband, UNUM paid Mrs. Adamson $100,000 in benefits, and denied her request for an additional $300,000 on the grounds that she failed to provide the required evidence of insurability for the additional amount of insurance and, during the pendency of her application, she had failed to pay the appropriate premium amount. On appeal, Mrs. Adamson contends that the district court erred in granting summary judgment in favor of UNUM. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

**<u>Background</u>**

Mrs. Adamson was a participant in an employee benefit plan sponsored by her employer, Micron Technology, Inc. ("Micron"). UNUM contracted with Micron to provide the group term life insurance portion of the plan. Mrs. Adamson applied and paid premiums for $50,000 coverage on Mr. Adamson and no evidence of insurability ("no evidence coverage") was required. On July 26,

1995, Mrs. Adamson requested an additional $150,000 coverage for Mr. Adamson, which if approved would result in an aggregate of $200,000 of coverage. The policy contained a provision for double payment for accidental death. The no evidence coverage for Mr. Adamson became effective on September 1, 1995.

This supplemental insurance request required evidence of insurability as well as an additional premium. As part of the underwriting process, the Adamsons completed and signed an "Evidence of Insurability and Application for Lifestyle Protection" on August 20, 1995. UNUM maintains it sent a September 18, 1995, letter (albeit with the wrong zip code) to Mrs. Adamson requesting that she contact a paramedic company to obtain a blood chemistry profile, urinalysis, and other information on Mr. Adamson as part of the underwriting process. Mrs. Adamson contends that she did not receive this letter. Aplt. App. at 56. Mr. Adamson was killed in a construction accident at his home on October 23, 1995. Mrs. Adams filed a claim for payment of $400,000 of benefits on November 13, 1995. UNUM paid $100,000 under the policy (half represented the "no evidence" of insurability portion, half represented the double payment upon accidental death), but declined her claim for an additional $300,000 for failure to provide the required evidence of insurability. According to UNUM's policy, if the employee did not submit the required evidence within 30 days of the insurer's request, the claim for the higher coverage amount was deemed no longer desired by Mrs.

- 3 -

Adamson and "the file [was] closed." See Aplt. App. at 1312, 1320.

Mrs. Adamson brought suit in Utah state court on various state law claims. UNUM removed the case to federal court, and successfully urged ERISA preemption. Mrs. Adamson was allowed to amend her complaint to allege ERISA claims, and she did so alleging a wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) and a breach of fiduciary duty under 29 U.S.C. § 1132(a)(2). In 2001, the district court granted UNUM summary judgment on the breach of fiduciary claim, but denied summary judgment on the wrongful denial of benefits claim.

The district court requested briefing, and subsequently issued an order remanding the case to the Plan Administrator – UNUM – in order to: (1) determine how much premium had been paid for Mr. Adamson's coverage, and (2) allow Mrs. Adamson the opportunity to submit additional information on the issue. UNUM conducted additional discovery and concluded that Mrs. Adamson's claim should be denied because she only paid premiums applicable to the $50,000 level of benefits. Mrs. Adamson appealed. In 2004, the district court granted UNUM summary judgment on Mrs. Adamson's wrongful denial of benefits claim. This appeal followed.

## Discussion

When the district court grants a motion for summary judgment, our review

is de novo, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986), and we apply the same standards as the district court. Zurich N. Am. v. Matrix Service, Inc., 426 F.3d 1281, 1287 (10th Cir. 2005). Summary judgment is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ERISA cases, our review is confined to the administrative record. Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 381 (10th Cir. 1992).

Where, as here, an ERISA plan grants a plan administrator or a delegate discretion in interpreting the terms of, and determining the grant of benefits under, the plan, we are required to uphold the decision unless arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113-15 (1989). In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis. Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999). In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one. Id.; see also Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263, 1269 (10th Cir. 2002). Accordingly, our review inquires whether the administrator's decision resides "somewhere on a continuum of reasonableness—even if on the low end." Kimber, 196 F.3d at 1098 (internal quotation omitted).

A lack of substantial evidence often indicates an arbitrary and capricious decision. Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir.

2002). Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Id. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. Sandoval, 967 F.2d at 382. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole. Caldwell, 287 F.3d at 1282.

We do note that where a "standard" conflict of interest exists, the plan administrator's decision is entitled to less deference, and the standard conflict is regarded "as one factor in determining whether the plan administrator's denial of benefits was arbitrary and capricious." Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1005 (10th Cir. 2004). As we understand her argument, Mrs. Adamson claims that an additional reduction in deference is appropriate given an inherent conflict of interest. Aplt. Br. at 7. She argues that under this approach, UNUM has the burden to prove the reasonableness of its decision, with this court taking a hard look at UNUM's rationale in denying benefits. We think that this approach neglects an essential prerequisite to invoking the burden shifting approach based on a conflict of interest. Some proof (supplied by the claimant) must identify a conflict that could plausibly jeopardize the plan administrator's impartiality. See Fought, 379 F.3d at 1005; Kimber, 196 F.3d at 1097.

UNUM acknowledges that, at first blush, a conflict appears to exist because

UNUM is both the insurer and the administrator.[1]  Indeed, in circumstances where an insurer doubles as the plan administrator, we have enunciated that "there is an inherent conflict of interest between its discretion in paying claims and the need to stay financially sound."  Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1296 n.4 (10th Cir. 2000); see also Fought, 379 F.3d at 1006; Welch v. UNUM Life Ins. Co. of Am., 382 F.3d 1078, 1087 (10th Cir. 2004).  It might be just as easily observed that an insurer has an incentive to pay claims and to get it right so as to avoid dissatisfaction (from plans as customers) and lawsuits. Whatever the merits concerning the potential motivation of an insurer doubling as a plan administrator, such observations were never meant to be an *ipso facto* conclusive presumption to be applied without regard to the facts of the case – including the solvency of the insurer or the nature or size of the claim.  The fact

---

[1] UNUM attempts to distinguish itself by terming its role as that of a "fiduciary" under 29 U.S.C. § 1002(21)(iii), and as therefore only qualifying as a "claims administrator" and not the "plan administrator" of 29 U.S.C. § 1002(16). According to Mrs. Adamson, the plan administrator is not discernable because, counter to the demands of 29 U.S.C. § 1022(a), (b), UNUM failed to prepare a "summary plan description," which would have outlined the identity of, *inter alia*, the plan administrator.  See Aplt. App. at 1189.  Mrs. Adamson also argues that the identity of the plan administrator is immaterial, as UNUM was the only actor who had the discretion to carry out the functions traditionally assumed by a plan administrator.  The district court ordered briefing on the issue, see Aplt. App. at 1179-80, yet curiously failed to address (or even allude to) the issue in its subsequent order granting summary judgment for UNUM.  Aplt. App. at 1218-1227.  We resist the invitation to forage into this fray, that is, to attempt to discern whether UNUM acted as a claim administrator or plan administrator, because our review of the administrative record persuades us that under either alternative the contested decision must be upheld.

that UNUM administered and insured the group term life insurance portion of this plan does not on its own warrant a further reduction in deference.

UNUM is correct in contending that the issue about the underlying claim in this case – the premium amounts paid by Mrs. Adamson – simply goes to the appropriate level of coverage to which Mrs. Adamson was entitled. This case is not about whether an insured loss occurred – of course it did, for that issue was resolved by UNUM in Mrs. Adamson's favor. Rather, this case turns on data furnished by Micron as the employer under a "self-reporting" policy, one where the employer accounts for the number of employees, the amount of coverage, and the premium owed and forwards that information to UNUM. Withholding and reporting decisions are made by Micron, not UNUM. Although that data must be applied against the plan provisions, we are at a loss in apprehending a conflict, particularly given the almost ministerial role of UNUM in these circumstances. Though we discern no basis for applying any other than a "pure arbitrary and capricious" standard in this case,[2] we apply the "standard conflict" sliding scale of deference in accordance with our precedent.

In applying this standard of review, we consider the evidence before the plan administrator at the time he made the decision to deny benefits. See Nance,

_____

   [2] Mrs. Adamson does not allege, and we do not discern, any serious procedural irregularities in this plan. Fought, 379 F.3d at 997. It simply proves too much to declare that a serious procedural irregularity will be present in every instance where the plan administrator's conclusion is contrary to the result desired by the claimant.

294 F.3d at 1269. As noted above, the first time this case came before the district court it was remanded in order to: (1) determine the premium amounts that had been paid for Mr. Adamson's coverage, and (2) allow Mrs. Adamson the opportunity to submit additional information on the issue. UNUM conducted additional discovery, and determined that Mrs. Adamson's claim should be denied because no premium other than that applicable to the $50,000 level of benefits was deducted from Mrs. Adamson's pay.

Mrs. Adamson poses a series of arguments: (1) the district court erred in failing to find that the unequivocal policy language leads to the conclusion that she is entitled to $400,000; (2) the district court erred because she actually paid more in premiums than the higher level of coverage would have required; (3) to the extent that the proper premium was not withheld, it was due to a "clerical error or omission" on Micron's part, and under the policy language, such an error does not bar her recovery of the full amount; (4) to the extent that the policy language is ambiguous, that is UNUM's fault as the drafter; and (5) Utah Code Ann. § 31A-23a-410 is saved from ERISA's pre-emptive scope and establishes an agency relationship between UNUM and Micron, therefore rendering UNUM liable to Mrs. Adamson for the higher coverage amount.

First, we note that the policy provides that:

During the time the Insurance Company is using the dependent's application and evidence of insurability to determine his acceptance for amounts more than the no evidence limit he will be insured for

the amount for which premium is being deducted from the employee's pay. However, if the Insurance Company does not approve the dependent's application and evidence of insurability he will continue to be insured for the no evidence limit.

Aplt. App. at 1250. According to Mrs. Adamson, because she instructed Micron to withhold the higher amounts from her salary, there could be no clearer indication that the policy's language contemplates that she is entitled to the higher amount while the insurer is contemplating coverage.[3] We are not persuaded. The language expressly informs that it is the "*amount for which premium is being deducted*" from her pay.[4] UNUM found, after extensive discovery, that Mrs. Adamson's premium withholdings during the underwriting period reflected the premium applicable to the $50,000 no evidence coverage.

___

[3] On September 18, 1995, UNUM sent a letter to Mrs. Adamson requesting that her husband have certain blood work completed so it could determine whether he was insurable at the higher coverage amount. Mrs. Adamson contends that she never received this letter. UNUM admits that the envelope did contain the incorrect zip code. We note that one of our sister circuits has encountered this issue in the ERISA arena, see Schikore v. BankAmerica Supplemental Retirement Plan, 269 F.3d 956, 962-65 (9th Cir. 2001) (holding that the Plan Administrator's determination that the common law mailbox rule was inapplicable under ERISA was arbitrary and capricious), but we decline the opportunity to decide both the potential applicability of the mailbox rule under ERISA and the question of whether the rebuttable presumption of that rule can be overcome by the showing of an incorrect zip code on the mailing, because this case is easily resolved on other grounds.

[4] Clearly, we disagree with the district court's conclusion that this language is ambiguous. The employer can withhold only a certain amount of premium, and that amount will correlate to a specific amount of benefits, that is, will be a sum certain. We are confounded by the notion that any ambiguity resides here.

We agree.

First, following Mr. Adamson's death, UNUM, as required by the plan, sought a Notice of Death from Micron's benefits administrator. This form was submitted, and indicated that Mrs. Adamson had $50,000 worth of insurance. Upon receipt, UNUM determined that Mrs. Adamson was entitled $100,000 in life benefits, which reflected double payment for accidental death. After Mrs. Adamson sent in a letter months later requesting an additional $300,000, UNUM once again checked with Micron, and once again received the answer that Mrs. Adamson "only paid for the basic $50,000 spouse coverage." Aplt. App. at 94.

Following the district court's initial remand, UNUM obtained and reviewed payroll and benefits records from Micron and inquired of Micron's counsel and benefits administrator the proper coverage amount, all of which led to the same amount. Cognizant of our standard of review, we conclude that UNUM followed the terms of the plan and that the conclusion was "sufficiently supported by facts within [its] knowledge." Kimber, 196 F.3d at 1098.

Mrs. Adamson next contends that she actually paid more in premiums than she would have been required to in order to reach the higher coverage amount. For some unknown reason, Mrs. Adamson chose to support this argument by simply asserting that UNUM fails to present evidence showing that her premiums reflect only $50,000 of coverage. We disagree. As noted above, the entire discovery process following the initial remand was focused on, and attained,

- 11 -

additional information pertinent to the determination of the relationship between the amount of salary withheld and the amount of coverage. Further, Mrs. Adamson does not point to any evidence indicating that higher premiums were deducted from her salary for these particular benefits. Accordingly, we find that UNUM's decision was not arbitrary or capricious on this ground either.

Mrs. Adamson next claims that to the extent that proper amount was not withheld, that is best characterized as a "clerical error or omission," and under the terms of the policy, she cannot be denied the requested coverage on that ground. We note that the policy is clear that a clerical error or omission "will not . . . affect an individual's amount of insurance." Aplt. App. at 1268. Yet this is inapposite to the case at hand for, as UNUM points out, there was no error – clerical or otherwise. Accordingly, the denial of benefits was not arbitrary and capricious on this ground either.

Mrs. Adamson's next contention is that to the extent that the language of the plan is ambiguous, that should be construed against UNUM as the drafter. Although we find no ambiguity, we note that this argument appears to be foreclosed by Kimber, 196 F.3d at 1100-01, where we rejected the application of *contra proferentem* when the plan administrator is given the discretion to interpret the terms of the plan and the arbitrary and capricious standard of review applies.

Lastly, Mrs. Adamson argues that Utah Code Ann. § 31A-23a-410, which she claims is saved from ERISA's pre-emptive scope, establishes an agency

relationship between UNUM and Micron, therefore rendering UNUM liable to Mrs. Adamson for the higher coverage amount. Once again, we disagree. UNUM points to the rather unambiguous policy language to counter Mrs. Adamson's contention, which states: "For all purposes of the policy or the employer's coverage under that policy, the Policyholder or employer acts on its own behalf or as agent of the employee. *Under no circumstances will the Policyholder or employer be deemed the agent of the Insurance Company*." Aplt. App. at 42 (emphasis supplied). Were this language not enough to drive home the point, and even assuming that it is not pre-empted, § 31A-23a-410 is inapplicable here, because that statute only applies to situations where the insured's policy has been canceled. § 31A-23a-410 ("[A]s between the insurer and the insured, the insurer is considered to have received the premium and is liable to the insured for losses covered by the insurance and for any unearned premiums *upon the cancellation of the insurance*.") (emphasis supplied). Suffice it to say that Mrs. Adamson's coverage has not been cancelled. Accordingly, we find no arbitrary and capricious denial here either.[5]

AFFIRMED.

---

[5]Because we dispose of this argument on this ground, we decline to address, without deciding, whether ERISA pre-empts the claim under 29 U.S.C. § 1144(a).