**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANTHONY NIEDENS,

        Plaintiff-Appellant,

v.

CONTINENTAL CASUALTY
COMPANY, a stock company,

        Defendant-Appellee.

No. 07-3113
(D.C. No. 05-CV-2176-CM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, **McCONNELL** and **GORSUCH**, Circuit Judges.

---

In this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), Anthony Niedens challenges the plan administrator's decision to terminate his long-term disability benefits. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

* * *

Stryker Corporation employed Mr. Niedens as a medical salesperson.

Among the employment benefits Stryker provided Mr. Niedens was a long-term

disability plan funded by an insurance policy issued by Continental Casualty

Company. Under the terms of the policy, Stryker served as the plan

administrator, though it contracted with Continental, through CNA Group Life

Assurance Company, to provide administrative services.[1] By its terms, the plan

expressly provided the plan administrator and other plan fiduciaries with

"discretionary authority to interpret the terms of the Plan and to determine

eligibility for and entitlement to benefits in accordance with the Plan." Jt. App.

at 219, 237.

---

[1]     Both the benefits denial letter and the appeal denial letter are on the letterhead of The Hartford. Jt. App. at 263, 270. While Mr. Niedens's administrative proceedings were pending, CNA Group Life Assurance Company became a subsidiary of The Hartford Financial Services Group, Inc., and CNA's name changed to Hartford Life Group Insurance Company. The Hartford, through Hartford Group Life Insurance Company, then provided administrative services for the policy.

In addition to Continental, The Hartford Financial Services Group, Inc., Stryker Corporation, and the plan itself were named as defendants in the district court. In August 2006 the district court dismissed the Hartford company, Stryker, and the plan as defendants, and thereafter Continental was the only defendant in the district court. Continental is also the only appellee in this appeal. No party argues that Continental is an incorrect defendant, that the other defendants were erroneously dismissed, or that some other party or parties are at fault. For convenience, in this order and judgment we will attribute all administrative decisions to Continental.

Mr. Niedens ceased working on December 29, 2001, and applied for disability benefits due to Crohn's Disease and associated diarrhea. He reported up to 9-10 bowel movements per day and alleged constant abdominal pain. Mr. Niedens received short-term disability payments from January to March, 2002, and long-term disability benefits from March 2002 through March 2004 based on his inability to perform his own occupation.

After that time, to be entitled to continued benefits, Mr. Niedens had to establish that he was unable to engage in any "gainful occupation." *Id*. at 208, 226. Any new job had to yield at least 60% of his indexed monthly earnings within the first twelve months to be considered a "gainful occupation" under the terms of the policy. *Id.* Because Mr. Niedens earned more than $14,000 a month, 60% of his indexed monthly earnings was approximately $105,000 a year. Based on medical reports, surveillance of Mr. Niedens, and a labor market survey conducted by a third-party rehabilitation service, Continental determined that Mr. Niedens could engage in a gainful occupation and terminated his long-term disability benefits effective February 1, 2005.

The labor market survey indicated that sufficiently high-earning jobs would be available to Mr. Niedens given his medical limitations, including his need for immediate access to a bathroom. Mr. Niedens argued to Continental that the survey was incorrect to the point of being fraudulent and presented statements from five persons named in the survey, as well as statements from himself and his

counsel, suggesting that the rehabilitation firm never conducted the survey it professed to have completed. In response, Continental asked the rehabilitation firm to provide its calling log. After reviewing the firm's calling log and a time sheet showing the time the firm expended conducting the survey, Continental ultimately concluded that the firm had conducted the labor market survey as represented, and refused to disturb its decision denying benefits.

Mr. Niedens exhausted his administrative remedies, then sued under ERISA. Relying on District of Kansas precedent, the district court allowed Continental to supplement the administrative record by introducing an affidavit from Cheryl Sauerhoff, appeal team leader for the Hartford Insurance Company, to explain how and why Continental decided to terminate Mr. Niedens's benefits and particularly why Continental decided to rely on the labor market survey. The district court found that Continental's decision that Mr. Niedens can work in a gainful occupation was not arbitrary and capricious and was supported by substantial evidence.

\* \* \*

On appeal, Mr. Niedens argues that (1) the district court erred in supplementing the administrative record with Ms. Sauerhoff's affidavit, either because it was not part of the administrative record or because it was not competent evidence, and (2) the termination of benefits was arbitrary and capricious and was not supported by substantial evidence, particularly in light of

his challenge to the labor market survey. Because we find that the decision to terminate benefits was not arbitrary and capricious and was supported by substantial evidence even disregarding Ms. Sauerhoff's affidavit, we need not decide whether the district court erred in supplementing the record in this case or whether the affidavit was competent evidence. *See* Fed. R. Civ. P. 61 (providing that an error in admitting evidence is not a ground for disturbing a judgment "unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1172 (10th Cir. 2005) (relying on Rule 61).

We review the district court's grant of summary judgment *de novo*. *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1002 (10th Cir. 2004) (per curiam). Where the ERISA plan, as here, "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," our review of the administrator's decision, like the district court's, is limited to examining whether its action was arbitrary or capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Fought*, 379 F.3d at 1003. However, where an administrator operates under a conflict of interest, this court applies a "sliding scale approach" that decreases the level of

deference in proportion to the level of conflict.  *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825-26 (10th Cir. 1996).

> Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard.  In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence.

*Fought*, 379 F.3d at 1006 (citations omitted).  "Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion.  Substantial evidence means more than a scintilla, of course, yet less than a preponderance.  The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole."  *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citations omitted).

As discussed above, Stryker's benefits plan expressly affords discretion to the administrator.  But, because it was both the administrator and the insurer of the plan, Continental operated under an inherent conflict of interest.  *See Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002).  Thus, the district court appropriately applied the arbitrary or capricious standard of review.  *Fought*, 379 F.3d at 1006.  With respect to the contours of this standard, we have explained that

> [w]hen reviewing under the arbitrary and capricious standard, the Administrator's decision need not be the only logical one nor even the best one.  It need only be sufficiently supported by facts within

[his] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on *any* reasonable basis. The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness–even if on the low end.

*Nance*, 294 F.3d at 1269 (alteration in original, quotation omitted).

Mr. Niedens contends that the decision was arbitrary or capricious because Continental relied on the labor market survey despite knowing it had never been completed as represented. Although Mr. Niedens's challenge to the survey is serious, we cannot say the administrator's rejection of it was beyond the "continuum of reasonableness–even if on the low end." By way of example, of the five affidavits from the persons named in the survey, only two are signed, sworn, and notarized; the other three, thus, amount to hearsay that normally would be inadmissible. At least one of the two sworn affidavits, moreover, contains information which appears to be beyond the personal knowledge of the affiant. *See* Jt. App. at 255. Mr. Niedens's own affidavit is likewise in significant part not based on his personal knowledge. *See id.* at 325-26 ¶¶ 4, 13, 15-18. And the probative portions of his counsel's affidavit are also hearsay. *See id.* at 232-35. Meanwhile, the survey Mr. Niedens challenges was not conducted by Continental but by a third-party firm with purported expertise in such matters and the record contains a detailed phone log and time sheet purporting to document many calls made and significant time spent by the firm conducting the survey. Given all this, we cannot say the administrator's decision to credit the

labor survey in the face of Mr. Niedens's challenge was, if not the only rational decision available to it, an arbitrary or capricious act.

Mr. Niedens also argues that he was denied the full and fair review that ERISA requires because the denial letters do not "set out in opinion form the rationale supporting [the] decision" so that Mr. Niedens could adequately prepare his appeal to the federal courts. Aplt. Br. at 55 (quotation omitted). Particularly, he complains that the denial letter did not address his evidence attacking the labor market survey, explain what steps Continental had taken in response to his materials, or otherwise address his challenge to the reliability of the survey.

Under ERISA, an employee benefit plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(1) & (2). This court has stated that a "full and fair review" requires "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Sage v. Automation, Inc.*

*Pension Plan & Trust*, 845 F.2d 885, 893-94 (10th Cir. 1988) (quotation omitted); *see also* 29 C.F.R. § 2560.503-1(h) (setting forth acceptable review procedures).

Here, Continental informed Mr. Niedens in its initial denial letter of the specific evidence on which it relied. Mr. Niedens was given, and availed himself of, the opportunity to challenge that evidence. Further, the record indicates that Continental considered Mr. Niedens's challenge: Continental requested additional information from the survey firm and the appeal denial letter acknowledges the materials Mr. Niedens submitted. To be sure, the appeal denial letter does not explain precisely why it rejected Mr. Niedens's challenge to the labor market survey and it does not include the other information his brief identifies as omissions. But while it may be preferable for an administrator to provide a claimant with as much information as possible, Mr. Niedens does not identify any authority indicating that ERISA's "full and fair review" requires the taking of particular steps in response to a claimant's challenge or requires a detailed explanation thereof in an appeal denial letter. Moreover, we have held that substantial, even if not complete, compliance with the requirements of § 1133 to be sufficient. *Sage*, 845 F.2d at 893, 895.

Finally, Mr. Niedens argues that Continental's decision to terminate benefits is not supported by substantial evidence. However, the medical records in this case indicate that Mr. Niedens can work at a sedentary occupation so long as he has ready access to a bathroom. The surveillance reports suggest that,

despite his medical condition, Mr. Niedens is able to conduct a great many daily activities. And the labor market survey reflects that there are jobs which would qualify as a "gainful occupation" under the policy. Continental's decision to terminate long-term disability benefits is, thus, supported by substantial evidence – namely, evidence that, even if not unassailable, is of the sort "a reasonable mind could accept as sufficient." *Adamson*, 455 F.3d at 1212.

* * *

The judgment of the district court is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge