**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JANICE M. FARR,

      Plaintiff-Appellant,

v.

HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY,

      Defendant-Appellee.

No. 08-3209
(D.C. No. 6:07-CV-01242-MLB-DWB)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **McKAY**, and **GORSUCH**, Circuit Judges.

After two years of providing disability benefits to plaintiff Janice Farr

pursuant to a group insurance policy, defendant Hartford Life and Accidental

Insurance Company terminated Ms. Farr's benefits because it determined she was

no longer disabled. Following an unsuccessful administrative appeal, Ms. Farr

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

brought this action for judicial review under the civil enforcement provision of the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. § 1132(a)(1). On cross-motions for summary judgment, the district court concluded Hartford's termination of benefits was supported by substantial evidence and dismissed the case. Ms. Farr appeals, and we affirm.

I.

Ms. Farr had worked as a registered nurse for Via Christi Health Systems for almost twenty years when she filed for disability benefits in July 2004, citing fatigue and pain associated with fibromyalgia. Disability benefits were provided under an insurance policy issued by Hartford to Via Christi as part of its employee welfare benefit plan ("Plan"). The Plan designates Hartford as the claims administrator and grants it full discretion and authority to determine eligibility for benefits.

In order to receive benefits under the Plan, an employee must demonstrate she is disabled as that term is defined in the policy. The policy states that for the first two years after ceasing work, "[d]isability or [d]isabled means . . . you are prevented by . . . sickness . . . from performing one or more of the Essential Duties of *Your Occupation*."[1] Admin. R. at 102 (emphasis added). "After that, you must be so prevented from performing one or more of the Essentials Duties of

---

[1] There is a ninety day period of time during which an employee must be disabled before benefits become payable, which is called the Elimination Period, but Ms. Farr's condition during this time is not at issue in this appeal.

*Any Occupation*." *Id.* (emphasis added). In Ms. Farr's case, "your occupation" means the job of a registered nurse as it is recognized in the general workplace, not necessarily the specific job that she performed for Via Christi. *See id.* at 108. "Any occupation" under the policy "means an occupation for which [she is] qualified by education, training or experience" with a baseline earnings potential. *Id.* at 101.

Hartford approved Ms. Farr's application for benefits, beginning in October 2004. Towards the end of the initial two-year period, however, it informed Ms. Farr it was reviewing her case to determine her continued eligibility under the "any occupation" definition of disability. Ultimately, based on medical evidence and an Employability Analysis Report ("EAR") prepared by a third-party rehabilitation service, Hartford determined there were occupations within Ms. Farr's physical capabilities for which she was qualified. It therefore terminated her benefits effective November 30, 2006. Ms. Farr retained counsel, who filed an appeal on her behalf. Following additional medical and labor market survey reports, Hartford upheld its denial of benefits and rejected the appeal. Ms. Farr then filed this lawsuit in the district court, which concluded that Hartford's decision to terminate her benefits was both procedurally proper and supported by substantial evidence. This appeal followed.

II.

We review the district court's grant of summary judgment de novo. *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1002 (10th Cir. 2004) (per curiam). Where, as here, the ERISA plan, "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," our review of the administrator's decision, like the district court's, is limited to examining whether its action was arbitrary or capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Fought*, 379 F.3d at 1003. Where a fiduciary operates under a conflict of interest, however, this court applies a "sliding scale approach" that decreases the level of deference in proportion to the level of conflict. *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825-26 (10th Cir. 1996).

> Under this less deferential standard, the plan administrator bears the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard. In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence.

*Fought*, 379 F.3d at 1006 (citation omitted). Here, Hartford operated under an inherent conflict of interest as both the insurer and administrator under the Plan. It therefore carries the burden of demonstrating that its decision to terminate Ms. Farr's benefits was reasonable and supported by substantial evidence.

-4-

> Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole.

*Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citations omitted).

## III.

Advancing the following arguments, Ms. Farr urges us to reverse the district court because she claims Hartford's decision to terminate her benefits was not supported by substantial evidence. First, she argues that in the course of investigating her case, Hartford improperly restricted access to her treating physicians. Second, she claims the district court erred in adopting Hartford's definition of the term sedentary. Third, she challenges the independent medical examination report issued by Dr. Michael Munhall, arguing it was improperly revised to support Hartford's termination decision and then not produced in a timely fashion. Finally, she challenges the EAR, arguing there is an inherent conflict between its conclusions and Hartford's initial award of benefits. The district court squarely addressed her first two arguments in its thorough memorandum and order, dated June 28, 2008, and as we cannot improve upon its persuasive reasoning, we adopt it here and likewise reject these arguments on appeal. Ms. Farr's final two arguments are discussed below.

A.  Dr. Munhall's Report

In the Fall of 2006, as Ms. Farr's initial two-year period of disability was coming to an end, Hartford, through the Network Medical Review Company ("NMR"), referred Ms. Farr to Dr. Michael Munhall for an independent medical examination.  Dr. Munhall examined Ms. Farr on October 2 and issued his report on October 8.  The report begins by listing seven doctors whose records Dr. Munhall reviewed and goes on to detail his own examination of Ms. Farr before concluding that she is capable of performing sedentary work.

> In summary, it is my opinion within a reasonable degree of medical probability that Janice Farr has no conclusive medical history, laboratory examination, radiology or neuromuscular/structural evidence to provide a diagnosis of autoimmune disease, Lyme disease or rheumatologic disease.  Janice presents with overlapping symptoms and features consistent with any number of connective tissue and soft tissue syndromes.  It is my opinion that Janice has no objective neuromuscular or structural deficit to preclude full-time employment without restriction.  Nevertheless, it is my opinion that Janice does have symptomatic suggestion of a soft tissue pain syndrome such as fibromyalgia that yields, most likely, the capacity to work full time at a sedentary level.

Admin. R. at 294.

Dr. Munhall also completed a physical capacities evaluation ("PCE"), dated October 5, setting forth his medical opinions concerning Ms. Farr's ability to perform certain tasks.   In one section, concerning her abilities in the areas of "handling," "fingering," and "feeling," Dr. Munhall checked boxes indicating Ms. Farr could perform these functions "occasionally." *Id.* at 296.  Just below

that section, he reiterated his opinion that she was capable of performing at a "sedentary full duty" level. *Id.* On October 11, Marcia Goodrich of NMR sent an email informing Hartford that Ms. Farr's medical examination was complete, but that Ms. Goodrich was addressing some concerns with the doctor. On October 13, NMR faxed a copy of Dr. Munhall's report and PCE to Hartford. Later that day, however, Ms. Goodrich faxed Hartford another copy of the PCE, which had been altered to state that Ms. Farr could handle, finger, and feel "frequently" instead of only "occasionally." *Id.* at 286. Ms. Goodrich wrote on the fax cover sheet that she had "called Dr. Munhall and he OK'd the changes." *Id.* at 285.

Ms. Farr seizes on the revised report as an opportunity to charge Hartford with foul play, arguing Dr. Munhall's change is so clearly advantageous to Hartford that it cannot possibly be trusted to reflect his true medical opinion. But as Hartford points out, there is no evidence to support this theory. Hartford claims Ms. Goodrich requested clarification from Dr. Munhall because his opinion regarding Ms. Farr's ability to work full time at a sedentary level was not consistent with a finding that she can handle, finger, and feel only occasionally. Hartford claims Dr. Munhall agreed and revised the PCE to be consistent with his other findings.

It is not clear from the record how the report actually came to be altered, but there is certainly nothing to indicate Hartford asked Dr. Munhall or Ms. Goodrich to make the change. What is clear, however, is that Dr. Munhall's

revised opinion concerning Ms. Farr's gross and fine motor skills is consistent with the balance of her medical records, including those of Dr. Georgia Ohlberg, whom she identified as her treating physician during the relevant time period. More importantly, Dr. Munhall's ultimate conclusion that Ms. Farr's fibromyalgia does not preclude her from performing full time sedentary work is wholly consistent with her medical history as set forth in the administrative record.

Dr. Ohlberg treated Ms. Farr throughout the period of her disability. She completed a PCE in August 2005 in which she checked boxes to indicate Ms. Farr could handle, finger, and feel frequently. She further noted Ms. Farr's "total body inflamatory [sic] state ha[d] improve[d] but [was] easily aggravated by prolonged activities." *Id.* at 447. In February 2006, Dr. Ohlberg completed another PCE, this time indicating Ms. Farr could handle, finger, and feel "constantly." *Id.* at 373. She reiterated that Ms. Farr's inflammation was improving but quick to worsen with prolonged activities. That same month, Ms. Farr was examined by Dr. Grant Padley, an orthopedic surgeon, who noted her "[d]exterity [was] preserved," and that there was "no evidence of osteoarthritis of the hands." *Id.* at 400. Dr. Padley did note, however, that Ms. Farr exhibited discomfort during his evaluation of her low back and neck and complained of multiple joint aches. His report does not offer a diagnosis.

On July 20, 2006, Dr. Ohlberg wrote to Hartford concerning Ms. Farr's progress. She reported it was taking Ms. Farr an hour to get out of bed in the

-8-

morning due to inflammation and that while her walking had improved, she continued to experience joint pain. She nonetheless concluded Ms. Farr could climb stairs and reach with her arms "constantly." *Id.* at 361. Dr. Ohlberg noted, however, that Ms. Farr believed her inflammation worsened with prolonged exposure to other people. On July 31, Dr. Ohlberg opined Ms. Farr could walk for up to three to four hours a day. In August, Hartford asked Dr. Joseph Tuthill for his medical opinion concerning Ms. Farr's physical capabilities. After reviewing her medical records and speaking with Dr. Ohlberg, Dr. Tuthill issued a report, dated September 11, 2006, concluding there were no medically supported restrictions that would prevent Ms. Farr from performing full time work.

Based on current medical opinions of these doctors, a review of Ms. Farr's medical history, and his own examination, Dr. Munhall concluded in October 2006 that Ms. Farr was capable of working full time in a sedentary occupation. This ultimate determination was reached before the revisions to his PCE concerning Ms. Farr's gross and fine motor skills, and, importantly, it is in complete harmony with the medical evidence, including the opinion of the single physician with long-term experience treating Ms. Farr's fibromyalgia. Dr. Munhall's conclusion is also in accord with the opinion of Dr. Phillip Marion, whom Hartford consulted during Ms. Farr's administrative appeal. After reviewing Ms. Farr's medical records and speaking with Dr. Ohlberg, Dr. Marion concluded: "There remains no objective physical impairment from a physical

medicine and rehabilitation perspective to support any specific occupational restrictions/limitations." *Id.* at 141. In sum, when considered in light of the record as a whole, Ms. Farr's challenge to Dr. Munhall's report is simply insufficient to cast doubt as to the genuineness and reliability of his medical opinion.[2]

## B. The Employability Analysis Report

Hartford terminated Ms. Farr's disability benefits based, in part, on a November 2006 EAR, which identified no less than fifteen occupations within Ms. Farr's physical capabilities and qualifications, including nursing. Ms. Farr contends there is an irreconcilable conflict between Hartford's initial determination of disability, which depended on a finding that she could not perform her own occupation as a nurse, and the EAR's identification of nursing as

---

[2] We also reject Ms. Farr's argument that she was somehow prejudiced by Hartford's alleged late disclosure of Dr. Munhall's revised report. Our review of the administrative record comports with the district court's findings concerning Hartford's disclosure of Dr. Munhall's opinion. Specifically, in its November 27, 2006, denial letter, Hartford informed Ms. Farr that according to Dr. Munhall she could handle, finger, and feel frequently. Ms. Farr's attorney acknowledged as much in his letter to Hartford, dated May 15, 2007, in which he challenged Dr. Munhall's ultimate conclusions, but not, interestingly, his findings concerning Ms. Farr's gross and fine motor skills. In short, we agree with the district court's finding that Ms. Farr suffered no prejudice by virtue of Hartford's late disclosure of an actual copy of the revised report. It is clear from the record that Hartford substantially complied with its obligation to produce documents under 29 C.F.R. § 2560.503-1(h)(2)(iii). *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 634 (10th Cir. 2003) (noting our willingness "to overlook administrators' failure to meet certain procedural requirements when the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA").

one of the jobs she is capable of performing. The district court refused to hear this argument, however, because Ms. Farr had failed to raise it during her administrative appeal. "The court may not consider new arguments, from either party, in its determination of plaintiff's claim[.]" App'x. at A32, (*citing Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180 (10th Cir. 2007)). Ms. Farr contends the district court's interpretation of *Flinders* was overly broad, arguing that it does not preclude a litigant from making new arguments on judicial review, but only from offering evidence outside the administrative record. Hartford continues to press its waiver argument under the rubric of administrative exhaustion.

This circuit, like others, has recognized an exhaustion rule for ERISA claims derived not from an explicit statutory directive but from "ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees." *McGraw v. Prudential Ins. Co. of Am.,* 137 F.3d 1253, 1263 (10th Cir. 1998). We have, accordingly, applied a rule barring ERISA claims that were not previously pursued administratively (i.e., claim exhaustion). But we have not extended this rule to bar subsidiary arguments urged on judicial review in support of a claim itself fully exhausted in the administrative process (i.e., issue exhaustion).[3]

---

[3]    We are aware of two circuit cases squarely addressing this issue. In both, the courts explicitly rejected an issue exhaustion requirement in the ERISA context. *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d Cir. 1984) ("The Pension Fund cites no case, nor are we aware of any case which holds that
(continued...)

*Flinders* did not present this issue directly because it dealt with a plan administrator's attempt during the litigation to offer a new rationale for its denial of benefits; it did not involve new arguments or theories advanced by the ERISA claimant. Reversing the district court's award of summary judgment to the administrator, we concluded its denial of benefits must stand or fall solely on the rationale articulated at the administrative level. *See id.* at 1193. Therefore, we held it was improper for the district court to consider a novel justification advanced for the first time in litigation. We relied on a statutory provision mandating that an administrator's denial of a claim must be in writing and must "[set] forth the specific reasons for such denial[.]" 29 U.S.C. § 1133(1); *Flinders*, 491 F.3d at 1190. And we reasoned this rule was intended to protect ERISA claimants from being "sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Flinders*, 491 F.3d at 1191 (quotation omitted). In dicta, we noted our interpretation was "consistent with the converse rule that a claimant may not urge *new grounds* outside the administrative record that would support the award of benefits." *Id.* (emphasis added). The question raised here is whether "new grounds" means simply new evidence or whether it includes

---

³(...continued)
a district court cannot decide a claim relying on a theory different from that presented to the Trustees of the Pension Fund. . . . [Plaintiff] should not be denied our consideration of this claim simply because she relies on an alternate theory."); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 631 (9th Cir. 2008) (analogizing to social security cases and concluding that "issue exhaustion is not applicable in the ERISA context").

arguments and theories, which would be tantamount to imposing an issue exhaustion requirement on ERISA plaintiffs.

The parties have thus presented an interesting and complex issue, but as we conclude its resolution is not critical to the outcome of this case, we leave if for another day. Simply put, it is irrelevant to our disposition whether, at the time her benefits were terminated, Ms. Farr possessed the functional capacities to resume working as a nurse. Under the Plan, Hartford was entitled to terminate her benefits after two years if she could perform "Any Occupation," Admin. R. at 102, and the EAR concluded she could perform many, both within and outside the health care industry, *see id.* at 206. As explained above and in the district court's order, Ms. Farr has not effectively challenged the assumptions underlying the EAR's conclusions, including that she can handle, finger, and feel frequently. Consequently, even if we accept her irreconcilable conflict argument, her opposition to the EAR does not reach far enough to materially undermine the overall determination under review, whether Hartford's decision to terminate her benefits was arbitrary and capricious. On the record before us, we cannot say that it was. The judgment of the district court is therefore AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge